UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

```
_____     )
                                    )
SHAWN T. MCCLINTON,                 )
                                    )
           Plaintiff,               )
                                    )
                v.                  )        Civil Action No. 19-11315-JCB
                                    )
SUFFOLK COUNTY JAIL, et al.,        )
                                    )
           Defendant.               )
_____     )
```

ORDER ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT[1]
[Docket No. 118]

November 1, 2021

Boal, M.J.

Pro se plaintiff Shawn T. McClinton, who at all relevant times was committed to the

Suffolk County Jail as a pretrial detainee, alleges that the Defendants have violated his First

Amendment right to practice his religion by failing to provide him with kosher meals.

Defendants have moved for summary judgment.  Docket No. 118.  For the following reasons, I

grant the motion.

I.      SCOPE OF THE RECORD

Local Rule 56.1 provides that a "party opposing [a motion for summary judgment] shall

include a concise statement of the material facts of record as to which it is contended that there

---

[1] All parties have consented to the jurisdiction of a U.S. Magistrate Judge for all purposes.
Docket Nos. 17, 24.

exists a genuine issue to be tried, with page references to affidavits, depositions and other

documentation." In addition, this Court ordered as follows:

> In addition to the requirements set out in Local Rule 56.1, and in order for the Court to have in hand a single document containing the parties' positions as to material facts in an easily comprehensible form, the opposing party, in preparing its response to the statement of facts, shall reprint the moving party's statement of material facts and shall set forth a response to each directly below the appropriate numbered paragraph.

Docket No. 75 at 2. Rather than responding to each of the Defendants' statement of facts,

however, McClinton stated as follows:

> The plaintiff states that the defendants stated what they (the defendants) deemed are undisputed facts about matters that do not concern the plaintiffs [sic] claims; the plaintiff will not address those claimed undisputed facts from the defendants that are irrelevant, and only mentioned by the defendants in order to attach the plaintiffs [sic] character, education (academic and spiritual), and race . . . There is no need to waste the court [sic] time.

Docket No. 122 at 1. He then proceeded to restate his allegations without any reference to each

of the Defendants' statements of fact. <u>See</u> <u>generally</u> Docket No. 122. McClinton has therefore

failed to comply with Local Rule 56.1 and this Court's order.

This Court's insistence that McClinton comply with Local Rule 56.1 is not just a matter

of form over substance. Rather, the First Circuit has "repeatedly emphasized the importance of

local rules similar to Local Rule 56." <u>Caban Hernandez v. Phillip Morris USA, Inc.</u>, 486 F.3d 1,

7 (1st Cir. 2007). It explained that:

> Such rules were inaugurated in response to this court's abiding concern that, without them, 'summary judgment practice could too easily become a game of cat-and-mouse.' Such rules are designed to function as a means of 'focusing a district court's attention on what is—and what is not—genuinely controverted.' When complied with, they serve 'to dispel the smokescreen behind which litigants with marginal or unwinnable cases often seek to hide [and] greatly reduce the possibility that the district court will fall victim to an ambush.'

> Given the vital purpose that such rules serve, litigants ignore them at their
> peril.  In the event that a party opposing summary judgment fails to act in
> accordance with the rigors that such a rule imposes, a district court is free,
> in the exercise of its sound discretion, to accept the moving party's facts as
> stated.

Id. (internal citations omitted).

Rules like Local Rule 56.1 "are meant to ease the district court's operose task and to prevent parties from unfairly shifting the burdens of litigation to the court."  Id. at 8.  Therefore, while this Court is generally disinclined to decide issues on procedural, rather than substantive grounds, McClinton's complete failure to comply with Local Rule 56.1 has improperly placed the burden on this Court to comb through the record to ascertain whether a genuine issue of facts exists.  This is exactly what Local Rule 56.1 proscribes.  "It is not the role of the Court to sift through the evidence looking for reasons to keep claims alive when plaintiff [himself] has declined to do so." Salcedo v. Town of Dudley, 629 F. Supp. 2d 86, 93 (D. Mass. 2009).

While McClinton is proceeding pro se in this matter, pro se status does not excuse a party from complying with procedural and substantive law.  See Ahmed v. Rosenblatt, 118 F.3d 886, 890 (1st Cir. 1997).  Moreover, this Court twice advised McClinton of his obligation to respond to the Defendant's statement of undisputed facts in accordance with the Local Rules, the Federal Rules of Civil Procedure, and this Court's order.   Docket Nos. 113, 117.  This Court also warned McClinton that failure to do so may result in the Court deeming the Defendants' statement of undisputed facts admitted for purposes of the motion for summary judgment.  Id. There is no excuse for McClinton's failure to follow this Court's instructions, especially after it put him on notice of the consequences of a failure to comply.  Accordingly, this Court deems the Defendants' Statement of Facts admitted.

II.     <u>FACTS</u>[2]

    A.     <u>The Defendants</u>

Steven Tompkins is the Suffolk County Sheriff.[3]  Eugene Sumpter was the

Superintendent at the Suffolk County Jail until April 2019.[4]  Carlos Goulart was the Suffolk

County Jail's Grievance Coordinator.[5]  As such, he was responsible for considering and

responding to grievances submitted by detainees at the Suffolk County Jail.[6]

    Throughout 2018 and 2019, Robert Tullos was a Lieutenant at the Suffolk County Jail.[7]

He worked in the kitchen, where he supervised employees of the Suffolk County Sheriff's

Department (the "Department").[8]  He was also responsible for working with employees of

Summit Foods, Inc. ("Summit"), the company that the Department had hired to administer its

food service contract.[9]

---

[2] The facts are taken from the Defendants' L.R. 56.1 Statement of Undisputed Material Facts ("SOF"), which as discussed above, this Court deems admitted.  Nevertheless, this Court construes the record in the light most favorable to McClinton and resolves all reasonable inferences in his favor.  See <u>Zampierollo-Rheinfeldt v. Ingersoll-Rand de Puerto Rico, Inc.</u>, 999 F.3d 37, 43 (1st Cir. 2021) (citing <u>Ocasio-Hernandez v. Fortuño-Burset</u>, 777 F.3d 1, 4 (1st Cir. 2015)).  This Court also notes that the Defendants have not cited to any affidavits, depositions, or any other evidence in support of some of their statements of fact.  See SOF ¶¶ 5-6.  Accordingly, this Court does not rely on SOF ¶¶ 5-6.

[3] <u>See</u> Docket No. 10 at 2; Affidavit of Michael Colwell (Docket No. 120-2) ("Colwell Aff.") at ¶ 1.

[4] <u>See</u> Colwell Aff. at ¶ 1.

[5] Affidavit of Carlos Goulart (Docket No. 120-4) ("Goulart Aff.") at ¶ 1.

[6] <u>Id.</u>

[7] Affidavit of Robert Tullos (Docket No. 120-3) ("Tullos Aff.") at ¶ 1.

[8] <u>Id.</u>

[9] <u>Id.</u> at ¶ 2.

Sheila Atkins was an Assistant Deputy Superintendent at the Suffolk County Jail.[10] Among other things, Atkins was responsible for considering detainees' requests for religious diets.[11]  She supervised Tullos on questions arising from the delivery of special meals to prisoners.[12]  She also supervised Goulart.[13]

B.    Kosher Meals

Prior to the events described in the Amended Complaint, the Department and Summit executed a contract for food services at both the Suffolk County Jail and the Suffolk County House of Correction.[14]  That contract was in place throughout McClinton's incarceration at the Suffolk County Jail.[15]

In the course of the bidding process for the food service contract, interested vendors submitted questions, including the following, which the Department answered and published to all.

Q:    Does the county have a kosher kitchen?

A:    There are three types of Kosher kitchens, we fall under the second category.  We have Ovens and Microwaves that are used strictly for kosher items.  The vendor brings in entrée items and side items which are Kosher, these are reheated in the above mentioned ovens, and assembled under the guidelines in this category.  We do not prepare raw food and as such we do not need two set of stoves, two sets of dishes, etc. . .[16]

---

[10] Colwell Aff. at ¶ 6.

[11] Id.

[12] Id.; Tullos Aff. at ¶ 3.

[13] Tullos Aff. at ¶ 3.

[14] SOF ¶ 9.

[15] Id.

[16] SOF ¶ 10.

Pursuant to the food services contract, Summit agreed that it would supply foods that met the requirements for a particular religion or medical condition, as requested by the Department.[17] Specifically, Schedule A of the food service contract requires Summit to:

> [P]rovide special religious and/or medical diets inclusive of all snacks and supplements for medical diets at no additional cost when so ordered by the [Department].  Such meals will follow SCSD policies[18] in so far as makeup content, portion size and caloric value.  The special religious meals shall not contain side dishes that are not compliant with the dietary restrictions of that particular religious meal (e.g. serving non-halal side dishes with a halal meal).  The portions of meat and other specifications of a religious meal shall be the same as regular meals under the Contract.[19]

During the time that McClinton was incarcerated at the Suffolk County Jail, Tullos supervised operations at the jail's kitchen.[20]  In addition to his supervision of prisoners, Tullos was the Department's liaison with Summit.[21]

Summit is responsible for buying all foodstuffs used in the production of meals.[22] Summit is also responsible for overseeing the preparation and service of food to inmates and staff at the Suffolk County jail.[23]  Food is prepared or heated in the kitchen at the jail, by a chef and others who work under his or her supervision.[24]  Once the components of the meal are ready,

---

[17] SOF ¶ 11.

[18] In his affidavit, Michael Colwell makes reference to the Department's policies regarding religious practice (S-471) and food service (S-760).  Colwell Aff. at ¶ 9.  However, the food service policy attached to the affidavit is numbered S-477.

[19] Id.

[20] SOF ¶ 13.

[21] Id.

[22] SOF ¶ 14.

[23] Id.

[24] SOF ¶ 15.

kitchen workers put food onto trays that move along a conveyor belt.[25]  Each tray is covered and then stacked on a cart, which is delivered to individual housing units where the prisoners eat their meals.[26]  Kosher meals are assembled on a disposable "clamshell" food container, and stacked on the same cart.[27]

      C.     <u>McClinton's Grievances</u>

On April 15, 2018, McClinton filed a grievance complaining that the kitchen was not sending kosher juice.[28]  He also complained that the kitchen was sending bread that was unsealed or wrapped by an inmate or officer, which, according to him, made the bread not kosher.[29]  Goulart responded that he would check with "religious services and the kitchen supervisor."[30]  Goulart then spoke with Rabbi Rodkins, who works with Jewish detainees at the jail, and learned that the way the kitchen served bread was not improper.[31]

On May 8, 2018, Goulart told McClinton about the discussion with Rabbi Rodkins, and that McClinton would receive kosher juice containers, as requested.[32]  Goulart also told McClinton that if he wanted to speak with the rabbi, the Department could arrange that.[33]

---

[25] <u>Id.</u>

[26] <u>Id.</u>

[27] <u>Id.</u>

[28] SOF ¶ 17.

[29] SOF ¶ 17; Docket No. 120-4 at 5.

[30] SOF ¶ 17.

[31] <u>Id.</u>

[32] SOF ¶ 18.

[33] <u>Id.</u>

On May 7, 2018, McClinton filed another grievance, complaining that he had received cereal and cookies that were not kosher.[34]  According to McClinton, the cereal and cookies were not kosher because they were taken out of their original packaging and rewrapped by an officer or inmate.[35]  He also alleged that he was discriminated against because the kitchen sent him and other Jewish detainees less juice than everyone else in the jail.[36]  Goulart responded as follows:

> Mr. McClinton, your issue with the juice has been addressed by the kitchen supervisor and you will receive two juices with your meals.  The cereal and the cookies that are provided are kosher and the method by which they are packaged in your meal was referred to Rabbi Rodkins and approved by him and religious services.  If you would like to speak with Rabbi Rodkins we could arrange it.[37]

McClinton appealed this resolution to Sumpter, who said that "[t]he method used by the Department to serve kosher meals has been reviewed and approved by Rabbi Rodkins.  I agree with the Grievance Coordinator's suggestion for you to speak with Rabbi Rodkins regarding your concerns."[38]

On September 19, 2018, McClinton again filed a grievance, this time stating that while he had received a "sealed TV dinner," he did not receive a "complete tray," and that bread and cookies provided to him had been removed from their packaging and rewrapped.[39]  He also asked to see Rabbi Rodkins.[40]  In response, Goulart wrote that a representative of the

---

[34] Docket No. 120-4 at 9

[35] Id.

[36] Id.

[37] Id.

[38] SOF ¶ 19.

[39] SOF ¶ 20; Docket No. 120-4 at 12.

[40] Id.

Department's religious services staff would contact the rabbi and McClinton, and that Tullos would address the issue of the allegedly incomplete meal.[41]

In a grievance dated December 11, 2018, McClinton asserted that the breakfast cereal and cookies he received were not kosher.[42]  He wrote that he had recently spoken with Rabbi Rodkins, who told him that if a person "who is not Jewish opens a presealed kosher container and reseals it," the food inside is no longer kosher.[43]  McClinton asked that the Department pay him monetary damages and provide him with single serving cookies and breakfast cereal.[44]

Goulart spoke with Summit's staff, who said that the food provided was in fact kosher.[45] McClinton conceded to Goulart that the cereal issue had been resolved, and Goulart asked Tullos to discuss cookies with McClinton.[46]  McClinton appealed the resolution of that grievance, specifically requesting monetary damages.[47]  Sumpter denied the appeal "because 'Monetary Damages' are beyond the scope of the grievance process," and "the issues regarding cereal and single serve cookies have been resolved."[48]

---

[41] Id.

[42] SOF ¶ 21; Docket No. 120-4 at 14.

[43] Id.  An investigative note dated January 18, 2019 indicates that Rabbi Rodkins confirmed that he spoke with McClinton and told him that "the way the cookies, breads and cereals were being served was not technically kosher."  Docket No. 66 at 34.

[44] SOF ¶ 21.

[45] SOF ¶ 22.

[46] Id.

[47] SOF ¶ 22; Docket No. 120-4 at 15.

[48] Id.

McClinton's next two grievances alleged that, on January 11 and 18, 2019, the kitchen staff had refused to send him kosher diet meal trays to him.[49]  Goulart investigated the matter and told McClinton that he had checked with kitchen staff who verified that McClinton received kosher meals on both occasions.[50]  Goulart denied McClinton's request for monetary damages.[51]

McClinton submitted the final grievance referenced in his Amended Complaint on April 5, 2019.[52]  He alleged that he had received an "incomplete kosher meal tray," and requested service of peanut butter with crackers and jelly "until the single served kosher cookies come from the vendor" as well as monetary damages.[53]  Defendant Goulart responded by confirming that the new cookies were on order, and noting that the kitchen had been sending McClinton a substitute in the interim.[54]  McClinton appealed the grievance, which was denied because "we are in consultation with Rabbi Rodkins regard kosher dietary needs, and are meeting his recommendation."[55]

Tullos continued to work with McClinton to resolve his concerns.[56]  After McClinton asserted that the kitchen served cookies that were not kosher, Tullos found an alternative and

---

[49] SOF ¶ 23; Docket No. 120-4 at 17, 19.

[50] SOF ¶ 24.

[51] Id.

[52] SOF ¶ 25; Docket No. 120-4 at 21.

[53] Id.

[54] Id.

[55] Docket No. 120-4 at 23.

[56] SOF ¶ 27.

ordered them for McClinton.[57]  According to Tullos, he sampled the cookies and disliked them, so he met with McClinton, who agreed.[58] Eventually, Tullos proposed that the kitchen serve "Craisins," a sweetened dried fruit snack that was kosher, and tasted better than the cookies he and McClinton had eaten.[59]  Tullos instructed the kitchen staff to supply these substitutes to McClinton.[60]

III.    ANALYSIS

    A.    Standard Of Review

    Summary judgment is appropriate if the record, viewed in the light most favorable to the nonmoving party – here, McClinton – "discloses 'no genuine issue of material fact' and [thus] demonstrates that 'the moving party is entitled to a judgment as a matter of law.'"  Zabala-De Jesus v. Sanofi-Aventis Puerto Rico, Inc., 959 F.3d 423, 427-428 (1st Cir. 2020) (quoting Iverson v. City of Boston, 452 F.3d 94, 98 (1st Cir. 2006)).  A dispute is genuine where the evidence "is such that a reasonable jury could resolve the point in the favor of the non-moving party."  Rivera-Rivera v. Medina & Medina, Inc., 898 F.3d 77, 87 (1st Cir. 2018) (citation omitted).  A material fact is one with the "potential of changing a case's outcome."  Doe v. Trustees of Bos. College, 892 F.3d 67, 79 (1st Cir. 2018).

    "A plaintiff opposing a properly documented summary judgment motion must carry 'the burden of producing specific facts sufficient to deflect the swing of the summary judgment scythe.'"  Trahan v. Wayfair Maine, LLC, 957 F.3d 54, 60 (1st Cir. 2020) (quoting Hannon v.

---

[57] Id.

[58] Id.

[59] Id.

[60] Id.

Beard, 645 F.3d 45, 48 (1st Cir. 2011)).  While the pleadings of a pro se litigant should be

construed broadly, "even a pro se litigant must meet the specificity requirement of Federal Rule

56, at least when the litigant becomes aware that specific facts must be provided to defeat a

motion for summary judgment."  Posadas de Puerto Rico, Inc. v. Radin, 856 F.2d 399, 401 (1st

Cir. 1988).

> B.    McClinton Has Failed To Provide Any Evidence That The
>        Defendants Were Deliberately Indifferent To A
>        Substantial Burden On The Exercise Of His Religious Faith

This Court has construed McClinton's complaint as bringing a claim under 42 U.S.C. §

1983.  See Docket No. 8 at 3.  "Section 1983 provides a cause of action against those who, acting

under color of state law, violate federal law."  Kuperman v. Wrenn, 645 F.3d 69, 74 (1st Cir.

2011) (citing 42 U.S.C. § 1983; Rodriguez-Cirilo v. Garcia, 115 F.3d 50, 52 (1st Cir. 1997)).

McClinton's claim is based on his contention that the Defendants violated his rights under the

First Amendment by denying him kosher meals.[61]

The Amended Complaint, however, does not allege personal participation by any of the

Defendants.  Rather, McClinton alleges that the Defendants failed to supervise unnamed kitchen

staff who sent non-kosher meals to him.  See generally Docket No. 10.  Supervisory liability

exists under Section 1983 only for an official's "own acts or omissions" and not under

respondeat superior or other theories of vicarious liability.  Whitfield v. Melendez-Rivera, 431

---

[61] The Defendants argue that McClinton cannot prevail on his claim because he lacks any
admissible evidence that he received non-kosher food.  Docket No. 119 at 8-9.  They contend
that McClinton failed to take the deposition of Rabbi Rodkins or to designate an expert witness
that would testify that the food he received was non-kosher.  Id. at 9.  McClinton, however, has
pointed to evidence that, viewed in the light most favorable to him, could show that, in January
2019, Rabbi Rodkins told the Defendants that the way the kitchen staff was handling cookies and
bread was "not technically kosher."  See Docket No. 66 at 34.  Therefore, whether or not
McClinton received non-kosher food is a disputed fact.  Accordingly, I decline to grant summary
judgment in favor of Defendants on that basis.

F.3d 1, 14 (1st Cir. 2005); see also Cepero-Rivera v. Fagundo, 414 F.3d 124, 129 (1st Cir. 2005) (only individuals who have directly participated in the conduct that deprived the plaintiff of his rights can be held liable under Section 1983).  Rather, in order to hold a supervisor liable under Section 1983, the supervisor's behavior must be "affirmatively linked" to the constitutional violations of his or her subordinates, such that it could be deemed "supervisory encouragement, condonation or acquiescence, or gross negligence . . . amounting to deliberate indifference." Whitfield, 431 F.3d at 14.

McClinton has not alleged that the Defendants directly encouraged or acquiesced in any violations of his rights.  Rather, he appears to be proceeding on a deliberate indifference theory. See Docket No. 10 at 5.  A plaintiff establishes deliberate indifference by showing "(1) that the officials had knowledge of facts, from which (2) the official[s] can draw the inference (3) that a substantial risk of serious harm exists."  Ramirez-Lluveras v. Rivera-Merced, 759 F.3d 10, 20 (1st Cir. 2014) (internal citations and quotations omitted).

Based on the record before this Court, McClinton cannot show that the Defendants were deliberately indifferent even if he could prove that he occasionally received non-kosher food. First, McClinton has not pointed to any evidence that defendants Tompkins or Atkins had knowledge of, or were involved at all, in the events giving rise to McClinton's claims.  In addition, the remaining Defendants took measures to resolve McClinton's complaints.

When McClinton complained about the receipt of non-kosher juice, bread, cookies, and cereal, Goulart arranged for the delivery of kosher juice and cereal, and determined, based on a conversation with Rabbi Rodkins, that the way the kitchen served bread was not improper.[62]  He also told McClinton that he could arrange for him to speak with Rabbi Rodkins about his

---

[62] SOF ¶¶ 17-18, 22.

concerns.[63]  It was not until January 2019 that Defendants apparently learned that it was improper to serve kosher food that had been removed from its original packing and rewrapped by kitchen staff.[64]  In response, Tullos ordered individually wrapped kosher rolls to serve to detainees receiving kosher food trays, and instructed kitchen staff to provide them to people on kosher diets.[65]  He also continued to work with McClinton regarding his concerns about receiving non-kosher cookies, ordering individually wrapped cookies, and finding a substitute when it turned out that McClinton disliked those cookies.[66]

Similarly, when McClinton complained that he had not received kosher meals on January 11 and 18, 2019, Goulart checked with kitchen staff who verified that McClinton received kosher meals on both occasions.[67]  On this record, therefore, McClinton has presented no evidence that any of the Defendants were deliberately indifferent to a serious risk that McClinton's exercise of his religious faith would be burdened by being denied kosher meals.  Accordingly, the Defendants are entitled to summary judgment on McClinton's claim.[68, 69]

---

[63] SOF ¶ 18.

[64] Docket No. 66 at 34.

[65] Tullos Aff. at ¶ 9.

[66] SOF ¶ 27.

[67] SOF ¶ 24.

[68] The Defendants have argued that they are entitled to qualified immunity.  Docket No. 119 at 13-14.  Because McClinton has failed to establish a constitutional violation by the Defendants, however, this Court need not address their qualified immunity argument.  Ruiz-Casillas v. Camacho-Morales, 415 F.3d 127, 134 (1st Cir. 2005) ("The failure of appellant's constitutional claims obviates our need to address the qualified immunity defense: we have found no constitutional violation.").

[69] The Defendants have also argued that they are entitled to Eleventh Amendment immunity to the extent that McClinton has attempted to make any official capacity claims against the

IV.  <u>ORDER</u>

For the foregoing reasons, this Court grants the Defendants' motion for summary

judgment.

           <u> /s/  Jennifer C. Boal                </u>
           JENNIFER C. BOAL
           UNITED STATES MAGISTRATE JUDGE

---

Defendants.  Docket No. 119 at 14-15.  In his opposition, however, McClinton clarified that he has sued the Defendants in their individual capacities only.  Docket No. 121 at 12.